AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

### for the
### Western District of New York

**United States of America**

**v.**

Case No. 18-MJ-1157

**Tommie Rollins**

*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

1.      In or about May 2018, in the Western District of New York, the defendant, **Tommie Rollins**, did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

2.      In or about June, 2018, in the Western District of New York, the defendant, **Tommie Rollins**, did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3.      In or about July, 2018, in the Western District of New York, the defendant, **Tommie Rollins**, did knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute,  cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

This Criminal Complaint is based on these facts:
☒  Continued on the attached sheet.

*Complainant's signature*

DAVID DAVIDZIK
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  October /ᵛ , 2018

*Judge's signature*

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State:  Buffalo, New York

## AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF ERIE      )   SS:
CITY OF BUFFALO    )


I, **DAVID J. DAVIDZIK**, Agent of the Customs and Border Protection Office of Air & Marine Operations, United States Department of Homeland Security, Buffalo, New York, having been duly sworn, depose and state as follows:


1.      I am an Agent with the Customs and Border Protection Office of Air & Marine Operations (AMO), and am currently assigned as a sworn Task Force Agent with the Drug Enforcement Administration, and as such, I am an "investigative or law enforcement officer" of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substance Act of 1970, Title 21 of the United States Code (USC), as amended. As an Agent with the DEA, your affiant is also an investigative law enforcement officer of the United States of America within the meaning of Section 2510(7) of Title 18 United States Code (USC). I have been employed by the Customs and Border Protection Office of Air & Marine Operations (AMO) since August 2009.


2.      As part of training with Customs and Border Protection Office of Air & Marine Operations (AMO), I successfully completed formalized training at the Department of Homeland Security Training Academy. During this training, I received detailed training,

both academic and practical application, in the areas of informant handling/debriefing, drug packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in Federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. Based on my training and conversations with other Special Agents and Task Force Officers of the DEA, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold, and used within the framework of drug trafficking.

3.      I have participated in numerous investigations that have targeted violators of Federal and State narcotics laws. I also have participated in several investigations involving wiretaps and have reviewed taped conversations and drug records pertaining to narcotics trafficking. I have also participated in numerous debriefings of narcotic traffickers, Cooperating Individuals, and Sources of Information.

4.      The information contained in this Affidavit is based upon your Affiant's personal knowledge, upon reports and information received from other law enforcement officers and agencies, and other law enforcement activities.

5.      As a result of working on this case with other Special Agents and Task Force Officers of the DEA, and other law enforcement agencies, including the Evans Police Department (EPD), I am familiar with the circumstances of the offenses described in this

Affidavit. Your Affiant is familiar with the facts and circumstances set forth as a result of my participation in this investigation, and review of information provided by other law enforcement officers, including, but not limited to, evidence obtained during this investigation, and conversations with a confidential source. My investigative experience, and that of other law enforcement officers participating in this investigation, serves as the basis for the opinions and conclusions set forth herein. As it is my purpose to obtain a Criminal Complaint for which only probable cause is required, I have not included each and every fact learned during the investigation to date.

6.     For the following reasons, your Affiant submits that there is probable cause to believe that Tommie ROLLINS, hereafter referred to as ROLLINS, did knowingly, intentionally, and unlawfully possess with the intent to distribute, and distributed, cocaine base, a Schedule II controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1).

## FACTUAL BASIS

7.     In April of 2018, DEA Buffalo Resident Office Agents, Task Force Officers and EPD initiated an investigation into a cocaine distribution organization operating in Evans, NY. During the course of this investigation ROLLINS was identified as a member of this organization.

8.     Utilizing various investigative techniques, Agents corroborated the information provided by a confidential source (CS-1), and determined, in fact, that ROLLINS and his

associates participated in a drug trafficking organization that is responsible for the distribution of cocaine and cocaine base to a network of customers.

## Confidential Source Controlled Buy – Early May 2018

9.     During the beginning of May, 2018, members of the Southern Tier Drug Task Force (STDTF) and DEA Buffalo Resident Office (BRO) Agents met CS-1 for the purpose of conducting the controlled purchase of four grams of crack cocaine from ROLLINS while under the direction and control of Officers and Agents. CS-1 advised that CS-1 would need $400 in U.S. currency to purchase suspected crack cocaine from ROLLINS. In addition, ROLLINS confirmed to CS-1 that CS-1 should meet ROLLINS in Silver Creek, NY for the purchase of the suspected crack cocaine.

10.     STDTF members searched CS-1 for weapons and contraband, with negative results. CS-1 was equipped with a concealed recording device and provided with STDTF Funds to purchase the suspected crack cocaine from ROLLINS. STDTF Officers then observed CS-1 travel to a trailer park in Silver Creek, NY. Specifically, STDTF Officers observed CS-1 approached a trailer located on Lot #35 to meet ROLLINS for the transaction.

11.     Upon arriving at the above-mentioned location, CS-1 walked into the side door of Lot #35 and into the residence. Inside the residence, CS-1 purchased approximately four (4) grams of suspected crack cocaine from ROLLINS for $400 STDTF Funds. After the purchase, CS-1 exited the residence and departed the area.

12.     Following CS-1's departure from ROLLINS's residence, STDTF members followed CS-1 and met CS-1 at a neutral location.  Upon meeting CS-1, CS-1 turned over the concealed recording device and approximately four (4) grams of suspected crack cocaine purchased from ROLLINS.  STDTF members searched CS-1 for weapons and contraband, with negative results.  Law Enforcement sent the seized suspected crack cocaine to the Erie County Central Police Services Laboratory (CPS) for safekeeping and analysis.  On June 20, 2018, the CPS Laboratory analyzed the suspected crack cocaine and determined it to be approximately 2.55 grams of cocaine base.

## Confidential Source Controlled Buy – May, 2018

13.     During the end of May, 2018, DEA Buffalo Resident Office (BRO) Agents met CS-1 for the purpose of conducting, while under the direction and control of Agents, a controlled purchase of suspected crack cocaine from ROLLINS.  CS-1 received a phone call from ROLLINS asking where CS-1 was and when CS-1 was going to be able to meet up with him.  ROLLINS confirmed to CS-1 that CS-1 should meet ROLLINS at 17 Christy Street, Silver Creek, NY for the purchase of the suspected crack cocaine. CS-1.  CS-1 was equipped with a concealed recording device and provided $800 DEA OAF (Official Advance Funds) purchase suspected crack cocaine from ROLLINS.

14.     Law Enforcement searched CS-1 for weapons and contraband, with negative results.  CS-1 was provided with DEA OAF Funds to purchase the suspected crack cocaine from ROLLINS.  Agents then observed CS-1 travel to 17 Christy St, Silver Creek NY.

Specifically, Agents observed CS-1 approached 17 Christy St, Silver Creek NY to meet ROLLINS for the transaction.

15.     Upon arriving at 17 Christy Street, Silver Creek, NY, CS-1 walked and entered the residence.  Inside the residence, CS-1 purchased approximately 4.65 grams of suspected crack cocaine from ROLLINS for $800 DEA OAF Funds.  After the purchase, CS-1 exited the residence and was followed by ROLLINS. While outside the residence, ROLLINS stated to the CS-1 that he wanted to find some new clients that were willing to purchase larger amounts. After the drug-related conversation, the CS-1 departed the area.

16.     Following CS-1's departure from 17 Christy St, Silver Creek, NY, DEA BRO Agents followed CS-1 and met CS-1 at a neutral location.  Upon Agents meeting CS-1, CS-1 turned over the concealed recording device and approximately 4.65 grams of suspected crack cocaine purchased from ROLLINS.  Law Enforcement searched CS-1 for weapons and contraband, with negative results. DEA BRO Agents sent the seized suspected crack cocaine and sent it to the DEA Northeast Laboratory for safekeeping and analysis. On June 14, 2018, the DEA Northeast Laboratory analyzed the suspected crack cocaine and determined it to be approximately 4.65 grams of cocaine base.

### Confidential Source Controlled Buy – June, 2018

17.     During June 7, 2018, DEA Buffalo Resident Office (BRO) Agents met CS-1 for the purpose of conducting, while under the direction and control of Agents, a controlled purchase of suspected crack cocaine from ROLLINS.  CS-1 received a phone call from

ROLLINS asking where CS-1 was and when CS-1 was going to be able to meet up with him. ROLLINS confirmed to CS-1 that CS-1 should meet ROLLINS in Fredonia, NY for the purchase of the crack cocaine. Agents equipped CS-1 with a concealed audio recording device and provided CS-1 with DEA OAF Funds to purchase the suspected crack cocaine from ROLLINS. CS-1 was handed $1250 in U.S. currency to purchase eighteen (18) grams of suspected crack cocaine from ROLLINS. Agents then observed CS-1 travel to the pre-arranged location.

18.    On that date, Chautauqua County Deputy Sheriff Department setup on surveillance at 73 Cleveland St. Fredonia, NY 14063 and witnessed ROLLINS and an unidentified female leave this location in a white 4 door Chrysler car. Southern Tier Drug Task Force Officers then followed this vehicle to a Day's Inn located near the buy location. ROLLINS then left the vehicle and proceeded to enter a blue Chevy Impala and drove this vehicle to the buy location. ROLLINS then parked next to the CS-1's vehicle and waited for CS-1 to enter his car. While in ROLLINS' vehicle, the CS-1 talked about future deals and ROLLINS current pricing on his eight balls of crack cocaine. At this point, CS-1 handed ROLLINS $1250 in DEA OAF Funds and in exchange, for eighteen (18) grams of crack cocaine. After the transaction, CS-1 and ROLLINS engaged in drug-related conversation, after which, ROLLINS departed the area.

19.    Following CS-1's departure from the pre-arranged location, DEA BRO Agents followed CS-1 and met CS-1 at a neutral location. Upon Agents meeting CS-1, CS-1 turned over the concealed audio recording device and approximately 9 grams of suspected crack

cocaine purchased from ROLLINS.  Law Enforcement searched CS-1 for weapons and contraband, with negative results.

20.     DEA BRO Agents sent the seized suspected crack cocaine to the DEA Northeast Laboratory for safekeeping and analysis.  On July 18, 2018, the DEA Northeast Laboratory analyzed the suspected crack cocaine and determined it to be approximately 9 grams of cocaine base.

**Confidential Source Controlled Buy – July 2018**

21.     During July, 2018, DEA Buffalo Resident Office (BRO) Agents met CS-1 for the purpose of conducting, while under the direction and control of Agents, a controlled purchase of suspected crack cocaine from ROLLINS.  CS-1 received a phone call from ROLLINS and agreed to meet the CS-1 at the corner of Young St. and Bailey Ave. in Buffalo, NY, for the purchase of the suspected crack cocaine. Agents equipped CS-1 with a concealed audio recording device and provided CS-1 with $1250 in DEA OAF Funds to purchase the suspected crack cocaine from ROLLINS.  CS-1 was handed $1250 in U.S. currency to purchase eighteen (18) grams of suspected crack cocaine from ROLLINS.  Law Enforcement searched CS-1 for weapons and contraband, with negative results. Agents then observed CS-1 travel to the pre-arranged location to meet ROLLINS for the transaction.

22.     Upon arriving at the pre-arranged location, CS-1 received a phone call from ROLLINS. ROLLINS then instructed the CS-1 to meet at 75 Wasmuth Avenue, Buffalo, NY 14211.  A short time later, ROLLINS arrived at Wasmuth Avenue in a Blue Chevy Impala

and parked in front of the residence located at 75 Wasmuth Avenue (hereinafter "Target Residence"). The Target Residence had a covered porch and an orange motorcycle (New York State plate#: NY85TC14) parked in front of it. ROLLINS exited the passenger side door of the Chevy Impala and walked into the Target Residence. A short while later, an unidentified black male in a white t-shirt walked out of the Target Residence and departed on the orange motorcycle. Shortly after, ROLLINS walked out of the Target Residence and entered CS-1's vehicle and began to discuss future drug transaction, amounts and pricing.

23.     A little while later, the unidentified black male returned on the orange motorcycle and entered the Target Residence. ROLLINS told CS-1 that he had been waiting for the unidentified black male to return and asked the CS-1 for the money. CS-1 handed ROLLINS $1250.00 DEA OAF funds. ROLLINS exited CS-1's vehicle and walked to the Target Residence and entered through the front door. A short time later, ROLLINS exited the Target Residence and walked to the CS-1's vehicle and handed CS-1 a clear bag containing suspected eighteen (18) grams of crack cocaine. After the transaction, CS-1 departed the area.

24.     Following CS-1's departure from the pre-arranged location, DEA BRO Agents followed CS-1 and met CS-1 at a neutral location. Upon Agents meeting CS-1, CS-1 turned over the concealed audio recording device and approximately 9 grams of suspected crack cocaine purchased from ROLLINS. Law Enforcement searched CS-1 for weapons and contraband, with negative results.

25.     DEA BRO Agents sent the seized suspected crack cocaine to the DEA Northeast Laboratory for safekeeping and analysis. On July 19, 2018, the DEA Northeast

Laboratory analyzed the suspected crack cocaine and determined it to be approximately 9 grams of cocaine base.

**WHEREFORE**, based on the foregoing, I submit that there is probable cause to believe that ROLLINS did knowingly, intentionally and unlawfully possess with the intent to distribute, and distributed, cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

DAVID J. DAVIDZIK
Task Force Agent
Drug Enforcement Administration

Subscribed a sworn to before me

this _10TH_ day of October, 2018.

HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge